F O R   P U B L I C A T I O N

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

FILED
JUL 3 1 2007
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re                                    ) Case No. 07-21431-A-13G
                                         )
DAVID COHRS,                             ) Docket Control No. FW-1
                                         )
                                         ) Date: June 25, 2007
        Debtor.                          ) Time: 9:00 a.m.
                                         )
_____)

### MEMORANDUM

The debtor has moved to value the collateral of Americredit, a 2005 Ford F150 pickup truck. If the motion is granted, Americredit's secured claim will be "stripped down" to the value of the truck. Americredit objects to the motion, contending that because it financed the debtor's purchase of the truck, its claim cannot be stripped down.

The motion will be denied and the objection will be sustained.

The court first notes that it invited further briefing from the debtor to reply to the arguments raised in Americredit's objection to the motion. No reply was filed.

On October 13, 2005, the debtor financed the purchase of the truck with a loan provided by Americredit. On March 5, 2007,

less than 910 days after the truck was purchased, the debtor filed a chapter 13 petition.

The debtor's proposed plan provides for Americredit's secured claim in Class 2. Class 2 claims will be paid in full. However, in this motion to value the truck, the debtor seeks to limit Americredit's secured claim to the value of the truck. See 11 U.S.C. § 506(a)(2). That is, the debtor wishes to bifurcate Americredit's claim, making it secured to the extent the truck has value, and unsecured to the extent it exceeds that value.

Americredit objects to the bifurcation of its claim, contending that its secured claim cannot be stripped down to the value of the truck because the "hanging paragraph" following 11 U.S.C. § 1325(a)(9) [hereafter, "section 1325(a)(*)"] prohibits the application of section 506(a)(2) to its claim. It maintains that its secured claim is the amount actually owed by the debtor as of the petition date rather than the lesser value of the truck.

Section 1325(a)(*) provides that "section 506 shall not apply to a claim described in [section 1325(a)(5)] if the creditor has a purchase money security interest," the secured debt was incurred within 910 days of the filing of the petition, and the collateral is a motor vehicle acquired for the personal use of the debtor.

The dispute concerning the applicability of section 1325(a)(*) boils down to whether Americredit holds a purchase money security interest. While there is no dispute that its loan financed the debtor's purchase of the truck, it also provided the debtor with the funds necessary, approximately $6,000, to pay a

loan secured by the vehicle the debtor traded as part of the purchase price of the truck.  The debtor maintains that the inclusion of the $6,000 with the purchase price of the truck destroyed the purchase money character of the loan and the security interest granted to Americredit.

The Bankruptcy Code includes no definition of the phrase, "purchase money security interest."  The logical place to look for a definition is the nonbankruptcy law applicable to the contract between the parties.

Cal. Comm. Code § 9103 provides in relevant part:

(a) In this section:

>   (1) "Purchase money collateral" means goods ... that secure[] a purchase money obligation incurred with respect to that collateral.
>
>   (2) "Purchase money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or value given to enable the debtor to acquire rights in or use of the collateral if the value is in fact so used.

(b) A security interest in goods is a purchase money security interest as follows:

>   (1) to the extent that the goods are purchase money collateral with respect to that security interest.

So, California's version of the Uniform Commercial Code ties the definition of a "purchase money security interest" to the definitions of "purchase money collateral" and "purchase money obligation."  Under section 9103, a debt for the "price" or the "value given to enable the debtor to acquire rights in" a car is a "purchase money obligation."  When the car is given as collateral for the purchase money obligation, it is "purchase money collateral" and the person owed the purchase money

-3-

obligation holds a "purchase money security interest."

The phrase, "value given to enable the debtor to acquire rights in" purchase money collateral is broad enough to include the "negative equity" financed by a lender like Americredit.

This interpretation is supported by a Comment of the drafters of the Uniform Commercial Code. Comment 3 to section 9103 provides in part:

> Subsection (a) defines "purchase-money collateral" and "purchase-money obligation." These terms are essential to the description of what constitutes a purchase-money security interest under subsection (b). As used in subsection (a)(2), the definition of "purchase-money obligation," the "price of collateral" or the "value given to enable" includes obligations for expenses incurred in connection with acquiring the rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations.
> The concept of "purchase-money security interest" requires a close nexus between the acquisition of collateral and the secured obligation.

True, this Comment does not expressly include amounts loaned to pay off negative equity owed on a trade-in vehicle among the charges that can be considered part of the price or value given. The list, however, is not an exclusive one. The Comment is merely giving examples.

When a car buyer offers to trade in a vehicle as part of the purchase price for another vehicle, the charges incidental to transferring the trade-in vehicle are part of the purchase price of the new vehicle. Those charges are incurred to "enable the debtor to acquire rights in" the new vehicle. Therefore, when a lender, like Americredit, finances the purchase of the new vehicle and, as part of the transaction also pays off an

outstanding balance owed on the trade-in vehicle, the loan extended is a purchase money obligation of the buyer, the new vehicle is purchase money collateral, and the lender's security interest is a purchase money security interest.

To the extent other bankruptcy courts have come to a contrary conclusion, this court respectfully disagrees with those courts. See In re Peasley, 358 B.R. 545, 556-58 (Bankr. W.D.N.Y. 2006); In re Acaya, 2007 WL 1492475, *2-3 (Bankr. N.D. Cal. 2007). They apparently read section 9103 and the above Comment to limit the sweep of the phrases, "price of collateral" and "value given to enable" a buyer to acquire property, to include only incidental expenses related to the purchase.

This court reads section 9103 and Comment 3 to require only a "close nexus" between the acquisition of the property and the secured obligation. That is, it must be part of a single transaction and all components of the obligation incurred must have been for the purpose of acquiring the property securing the new obligation.

So, if a debtor borrows money both to finance a new vehicle and to pay off a debt encumbering his or her existing vehicle, but does not trade in that vehicle to the seller, this court would conclude that the inclusion of the pay-off amount in the loan destroys its purchase money character. But here, the debtor traded in his existing vehicle to the seller as part of the value given to acquire the truck.

Other California law supports the notion that financing negative equity owed on a vehicle traded in as part of the purchase of a new vehicle is considered part of the price paid

for the new vehicle.  Cal. Civil Code § 2981(e) provides:

> 'Cash price' means the amount for which the seller would sell and transfer to the buyer unqualified title to the motor vehicle described in the conditional sale contract, if the property were sold for cash at the seller's place of business on the date the contract is executed, and shall include taxes to the extent imposed on the cash sale and the cash price of accessories or services related to the sale, including, but not limited to, delivery, installation, alterations, modifications, improvements, document preparation fees, a service contract, a vehicle contract cancellation option agreement, and **payment of a prior credit or lease balance remaining on the property being traded in**." [Emphasis added.]

And, not only does section 2981 suggest to the court that section 9103 should be interpreted consistently to include negative equity within the definition of a purchase money obligation, but California's version of Article 9 of the Uniform Commercial Code is expressly made subject to section 2981.  Cal. Comm. Code § 9201(b) provides that "[a] transaction subject to this division is subject to any applicable rule of law which establishes a different rule for consumers [including] ... the Automobile Sales Finance Act, Chapter 2b (commencing with Section 2981)...."

The court agrees, given section 9201(b), that sections 9103(a)(2) and section 2981 should be interpreted consistently. See also In re Petrocci, ___ B.R. ___, 2007 WL 1813217 (Bankr. N.D.N.Y. 2007).  As a result, in the context of auto sales, the value given to acquire a vehicle includes negative equity in a vehicle traded in as part of the purchase price of a new vehicle. Hence, a lender financing such a transaction acquires a purchase money security interest and the debtor incurs a corresponding purchase money obligation.

Therefore, section 1325(a)(*) is applicable and the debtor may not strip down Americredit's secured claim to the value the truck had on the petition date.

A separate order has been entered denying the motion.

Dated: 31 July 2007

By the Court

_____
Michael S. McManus, Chief Judge
United States Bankruptcy Court

**CERTIFICATE OF MAILING**

  I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

Ann Friend
PO Box 830
Modesto, CA 95353-0830

David Goodrich
535 Anton Blvd 10th Fl
Costa Mesa, CA 92626-1977

David Cohrs
910 Santa Pino Ct
Vallejo, CA 94590

Russell Greer
PO Box 3051
Modesto, CA 95353-3051

Office of the U.S. Trustee
Robert T Matsui United States Courthouse
501 I Street, Room 7-500
Sacramento, CA 95814

Dated: July 31, 2007

              _Susan C. Cox_
              Susan C. Cox
              Judicial Assistant to Judge McManus